IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| WELLS FARGO BANK, N.A.<br>101 North Phillips Avenue<br>Sioux Falls, SD  57104<br><br>       Plaintiff,<br><br>v.<br><br>JOSEPHINE DIUR,<br>c/o Melehy & Associates LLC<br>8403 Colesville Road, Suite 610<br>Silver Spring, MD  20910<br><br>and<br><br>TODD LUBAR<br>7835 Hampden Lane<br>Bethesda, MD  20814<br><br>       Defendants. | Case No.  **8:08-CV-1914** |

## COMPLAINT

Plaintiff Wells Fargo Bank, N.A. ("Plaintiff" or "Wells Fargo"), for its complaint against Defendants Todd Lubar ("Lubar") and Josephine Diur ("Diur") (collectively "Defendants"), alleges and pleads as follows:

### The Parties

1.     Plaintiff Wells Fargo is a federal chartered national bank with operations throughout the United States, including Maryland.

2. Diur and Lubar jointly own as tenants in common a residential property in Montgomery County with an address of 22 Piney Meetinghouse Court, Potomac, Maryland 20854 ("Property"). Diur owns a 70% interest in the Property; Lubar owns the remaining 30% interest.

3. Lubar is an individual who resides at 7835 Hampden Lane, Bethesda, Maryland 20814. As alleged more fully herein, Lubar obtained mortgage financing from Wells Fargo in May, 2007. In connection with such financing, Lubar conveyed a deed of trust on the Property to Wells Fargo.

4. Diur is an individual who owns property in Florida and maintains her domicile in South Africa. Although she claims it to be a forgery, Diur's signature appears on the deed of trust conveyed to Wells Fargo in connection with Lubar's mortgage financing. The address set forth in the caption for Diur is that of her attorney in Maryland for purposes of the disputes described herein.

## Jurisdiction and Venue

5. This Court has jurisdiction over this dispute because the claims asserted herein arise under federal law, specifically the Truth-in-Lending Act ("TILA"), 15 U.S.C. §§ 1601 et. seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

6. This Court has personal jurisdiction over Defendants because the transactions at issue occurred in Maryland and involved Maryland real estate owned jointly by Defendants.

7. The Property is located in this district. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## Factual Allegations

**A.   Transactions Involving the Property**

8. Diur became sole owner of the Property pursuant to a deed recorded on September 3, 2002.

9. Diur subsequently encountered financial difficulties and was facing foreclosure on the Property. Diur considered selling the Property and engaged a real estate agent to explore this possibility. Diur's real estate agent identified Lubar as a potential buyer.

10. Diur and Lubar met in early 2005 to discuss ways to help Diur resolve her financial difficulties, including through sale of the Property to Lubar. As a result of these discussions, Diur and Lubar executed a Purchase Agreement ("Agreement") dated March 3, 2005. Pursuant to the Agreement, in exchange for consideration specified therein, Diur conveyed to Lubar a 30% ownership interest in the Property.

11. The Deed establishing Diur and Lubar as tenants in common in the Property was recorded on or about March 8, 2005. The respective ownership interests of Diur and Lubar have not changed since this date.

12. Defendants subsequently obtained new mortgage financing secured by the Property. Specifically, on or about July 21, 2006, Lubar and Diur conveyed a deed of trust to Countrywide Home Loans, Inc. to secure a loan in the amount of $2,100,000.00. The Countrywide deed of trust was recorded on August 3, 2006.

13. Lubar applied to Wells Fargo for second lien mortgage financing, to be secured by the Property, on or about April 20, 2007. Wells Fargo agreed to establish a home equity line of credit secured by the Property in an amount not to exceed $254,350.00.

14. During this time period in 2007, Diur maintained residences in Florida and in South Africa. At no time since January 1, 2007 has the Property been Diur's principal dwelling.

15. Lubar was to be sole obligor on the mortgage note. To ensure that it would receive a security interest enforceable against the entire Property, Wells Fargo required that both Lubar and Diur sign a deed of trust.

16. On or about May 9, 2007, a second lien deed of trust in favor of Wells Fargo was executed by Lubar and nominally by Diur. The deed of trust in favor of Wells Fargo was recorded on June 15, 2007.

### B.    Prior Litigation Among the Parties

17. On or about December 6, 2007, Diur filed a lawsuit in Montgomery County Circuit Court, Civil Action No. 289582, against Lubar and Wells Fargo. In her Complaint, Diur alleged that Lubar forged her signature on the Wells Fargo deed of trust. Diur alleged further that she neither authorized the execution of the deed of trust nor had knowledge that the deed of trust was to be executed.

18. Diur's original state-court complaint alleged two causes of action. In her first cause of action, Diur sought an equitable order, pursuant to Md. Code Ann., Real Prop. § 14-107, requiring that the Property be sold in lieu of partition. In her second cause of action, Diur sought a declaratory judgment decreeing on the basis of Lubar's alleged forgery of the deed of trust that the deed of trust is "void *ab initio*." At no time has Diur ever asserted a TILA claim in her state-court litigation.

19. On or about January 22, 2008, Lubar filed a motion to dismiss Diur's state-court complaint. Lubar argued, among other things, that the complaint should be dismissed because Diur had agreed that any disputes arising from their Agreement dated March 3, 2005, should be resolved through arbitration.

20. Diur subsequently filed a demand for arbitration with the American Arbitration Association. On April 7, 2008, pursuant to the motion to dismiss filed by Lubar, the Circuit Court for Montgomery County entered an order staying the case pending disposition of the arbitration proceedings between Diur and Lubar.

21. The state court action remains stayed in its entirety at this time. Upon information and belief, the arbitration proceeding between Diur and Lubar is scheduled for hearing in August, 2008.

C. **Diur's Purported Notice of Cancellation**

22. On July 2, 2008, counsel for Diur, Regan Rush, Esq. ("Rush"), sent a letter to Wells Fargo enclosing a signed Notice of Right to Cancel ("Notice"). *See* Exhibit 1. Wells Fargo received the Rush letter and the Notice on July 3, 2008.

23. Rush represented in her cover letter that the Notice had been executed by Diur on July 2, 2008. Rush stated further that Diur had first received a copy of the Notice on July 1, 2008 and that she had not previously received a copy of any TILA disclosures in connection with the Wells Fargo loan secured by the Property. *Id*.

24. The Rush letter alleged that the purported signature of Diur acknowledging receipt of the Notice on May 9, 2007, was a forgery. Rush stated that Diur had never consented to either the Wells Fargo loan or the use of the Property as security for the loan, and further that Diur had not received any proceeds from the loan. The letter then demanded that Wells Fargo "promptly remove its security interest from 22 Piney Meetinghouse Court." *Id*.

25. The Notice sets forth certain information required by TILA to be disclosed to borrowers. The Notice explicitly states that Wells Fargo has established an open-end credit account for the recipient

of the Notice (*i.e.*, Diur) and that Diur has agreed to give a security interest in her "home" as security for the account. *Id*.

26. The Notice states that Diur has the right to cancel her loan account within three days of the latest to occur of certain events, including the date she receives the Notice. *Id*. Diur alleges that the Notice is timely because it was sent to Wells Fargo one day after her actual receipt of the Notice. *Id*.

27. The Notice states that a valid cancellation of the loan account means that Wells Fargo will take steps to cancel the security interest and return any "money or property you have given to us or to anyone else in connection with the account." *Id*.

28. The Notice states that upon cancellation by Wells Fargo Diur would have a legal obligation to return the principal amount of the money lent by Wells Fargo. The Notice specifies the address where money is to be delivered. The Notice further states that Diur may keep the principal only if Wells Fargo does not "take possession of the money or property within 20 calendar days of [her] offer" to return it. *Id*.

29. Based on Diur's allegations in the state-court litigation and on the plain terms of the Rush letter accompanying the Notice, Diur demands the rescission remedy afforded by TILA. Diur does not, however, intend to return the principal due to Wells Fargo, as required by TILA.

### Claim for Relief

### Count I
### (Declaratory Judgment)

30. Wells Fargo incorporates by reference the foregoing paragraphs 1-29 as if fully set forth herein.

31. An actual controversy exists within the jurisdiction of this Court. Wells Fargo hereby petitions the Court to declare the respective rights and obligations of the parties under TILA and, if necessary, under the common law.

32. Subject to exceptions set forth in the statute, TILA specifically authorizes a borrower to rescind a covered loan transaction within three days after either consummation of the transaction or delivery of the information and forms required by the statute, whichever occurs later. 15 U.S.C. § 1635(a). The right to rescind under TILA applies only to loans secured by the borrower's "principal dwelling." *Id*. The right to rescind may only be exercised by a resident of the United States. 12 C.F.R. § 226.1(c) (2008); Official Staff Commentary on Regulation Z, § 226.1(1)(c).

33. When an obligor timely cancels a loan transaction under TILA, the lender must, within 20 days of receipt of the notice of cancellation and subject to certain exceptions, return any money or property given by the borrower. Within the same time period, the lender must also take action to reflect the termination of the security interest. 15 U.S.C. § 1635(b).

34. TILA further requires the borrower to return the principal paid by the lender in connection with the loan, such return to occur "[u]pon the performance of the creditor's obligations under this section[.]" 15 U.S.C. § 1635(b).

35. The rescission remedy set forth in TILA is designed to restore the parties to the *status quo ante*; the lender gets back the money it lent, the borrower gets back any fees or interest she paid, and the security interest given for the loan is cancelled.

36. TILA specifically confers upon the courts the power to modify the rescission remedy set forth in the statute. 15 U.S.C. § 1635(b) ("[t]he procedures prescribed by this subsection shall apply except when otherwise ordered by a court"); *see also* Regulation Z, 12 C.F.R. § 226.23(d)(4).

7

37. Wells Fargo asks the Court as an initial matter to declare whether the extension of credit by Wells Fargo is a covered transaction subject to the right of rescission under TILA. If the Property was not Diur's "principal dwelling" as that term is used in TILA, the Court should conclude that Diur has no right to rescind the Wells Fargo loan transaction. In addition, if Diur was not a "resident" of the United States as that term is applied to TILA, the Court should conclude that Diur has no right to rescind the Wells Fargo loan transaction.

38. If the Court determines that the rescission remedy may be available to Diur for this credit transaction, Wells Fargo asks the Court to determine whether or not the Notice signed by Diur on July 2, 2008, was an effective cancellation of the loan and security interest under TILA. If Diur in fact received, in a legally enforceable manner, TILA disclosure forms and written notice regarding her right to cancel contemporaneously with the extension of credit on May 9, 2007, the Court should conclude that Diur's purported cancellation was not timely.

39. If the Court determines that Diur has a right to rescind under TILA, that she did not receive all appropriate disclosures in 2007, and that she timely exercised her right to cancel by executing the Notice on July 2, 2008, Wells Fargo asks the Court to declare the rights and obligations of the parties under these circumstances. More specifically, if the Court determines that Diur timely exercised a valid right to rescind, and if the Court further determines that Lubar wrote Diur's signature on the loan documents without Diur's authorization, Wells Fargo asks the Court to declare that its security interest shall be treated as attaching to Lubar's interest in the Property from the date of delivery and recording, consistent with Maryland law.

WHEREFORE, Wells Fargo prays that this Court enter a declaratory judgment addressing the issues set forth herein, and further that the Court award costs and such other relief as the Court deems just and proper.

                            BALLARD SPAHR ANDREWS & INGERSOLL, LLP

July 23, 2008                 /s/ Daniel J. Tobin
                            Daniel J. Tobin, Esq. (Fed. Bar No. 10338)
                            Gareth S. Smith, Esq. (Fed. Bar No. 16661)
                            4800 Montgomery Lane, Seventh Floor
                            Bethesda, Maryland 20814-3401
                            Telephone:  (301) 664-6210
                            Facsimile:  (301) 664-6299

                            *Attorneys for Plaintiff, Wells Fargo Bank, N.A.*